# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT E. CRAGG, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>)<br>Defendant. ) | Case No. CIV-16-48-SPS |

## OPINION AND ORDER

The claimant Robert E. Cragg, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 18, 1983, and was thirty years old at the time of the administrative hearing (Tr. 62). He completed high school, and has worked as a fast food worker, fast food cook, tractor driver, trust worker, and farm worker (Tr. 53, 164). The claimant alleges he has been unable to work since May 16, 2009, due to bipolar disorder and depression (Tr. 45, 163).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on March 28, 2012 and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 23, 2012. His applications were denied. ALJ Richard J. Kallsnick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 9, 2014 (Tr. 45-54). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his final decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the nonexertional limitations of

performing simple tasks with routine supervision, relating to supervisors and peers on a superficial work basis, and that he can adapt to a work situation, but cannot relate to the general public (Tr. 49). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, industrial cleaner, light hand packer, sorter, and sedentary hand packer (Tr. 53-54).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess his RFC, and (ii) failing to properly account for the opinion of one of his treatment providers. The Court agrees with both of these contentions, and the Commissioner's decision should therefore be reversed for further proceedings.

The ALJ determined that the claimant had the severe impairments of bipolar disorder and panic disorder (Tr. 48). The relevant medical evidence in the record indicates that the claimant has been treated for a number of years for bipolar disorder and insomnia since prior to the alleged onset date (Tr. 230-295). Treatment notes indicate the claimant frequently reported medications not working, or there was a need to adjust/strengthen doses (Tr. 230-295) Additionally, the claimant reported an improvement on suicidal thoughts with medication, but continued need for additional sleeping aids (Tr. 247, 241).

Treatment notes from Dr. Jeannie McCance, M.D., a psychiatrist, reflect that she managed his mental health medications and assessed him with bipolar disorder and AADD (Tr. 326, 355-360).

On June 9, 2012, Dr. Beth Jeffries conducted a mental status examination of the claimant. Upon examination, she assessed him with bipolar disorder by history and panic disorder without agoraphobia (Tr. 329). In her "Prognosis and Recommendation," Dr. Jeffries stated that the claimant's appearance and behaviors were consistent with his symptoms, and that she estimated his intelligence in the low range but well above an IQ of 80, noting that he could not interpret common proverbs or demonstrate concrete thinking, but that his judgment and insight appeared to be intact (Tr. 329). She noted there was no indication he had trouble concentrating, but that attention loss might be attributed to panic and bipolar disorder (Tr. 330). She recommended he continue counseling and medication compliance (Tr. 330). Finally, she found that he could manage his concentration under low stress conditions, and could manage pace and flexibility under structured and low stress conditions, including the ability to understand both simple and complex instructions in low stress settings, but that he might have some difficulty implementing information on a consistent basis. She also recommended that he would benefit from an overseer of his funds (Tr. 330).

On December 1, 2012, Dr. Jeffries assessed the claimant a second time (Tr. 362). Following this exam, she assessed him with bipolar disorder with psychotic features (Tr. 364). In the "Prognosis and Recommendations," Dr. Jeffries stated that she believed the claimant would have difficulty managing work in a fast-paced environment and in interacting socially with others on a consistent basis (Tr. 365). She state that she thought he would be capable of managing working with very low stress and at a very slow pace (Tr. 365). In support, she stated that she thought there was an impairment in judgment

and insight, as well as an impairment in his ability to balance his moods, which might make it difficult for him to interact with others appropriately on a consistent basis (Tr. 365). She again stated she had concerns about mismanagement of money and that he would benefit from an overseer of his funds (Tr. 365).

On July 18, 2012, a state reviewing physician found that the claimant had mild restrictions of activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 342). She then completed the mental RFC form, indicating that the claimant was markedly limited in the three typical areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 346-347). She then concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 348).

On January 31, 2014, Dr. Charles Lester completed a mental Medical Source Statement (MSS), indicating that the claimant had marked limitations in the ability to understand and remember very short and simple directions, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to respond appropriately to changes in the work setting (Tr. 405-406). He also indicated the claimant had moderate limitations in ten other areas (Tr. 405-406).

On February 25, 2014, it appears that Dr. Lester completed another Mental MSS, in which he indicated that the claimant had marked limitations in the ability to complete a workday and workweek, in addition to seven moderate limitations and eleven mild limitations (Tr. 410-411).

Plaintiff's counsel apparently submitted treatment records from Dr. Lester to the ALJ, but they were not made part of the official record until the Appeals Council reviewed the record. The assessment reflects that on August 20, 2013, Dr. Lester had diagnosed the claimant with major depression rule out bipolar disorder, ADHD, and panic disorder (Tr. 13). Dr. Lester's treatment notes indicate that the claimant's anxiety was only sometimes under control, but that he struggled with anger and focus as well (Tr. 9-12). Therapist Alicia Dickens, who worked at the same clinic, noted on February 5, 2014, that the claimant's diagnoses were bipolar I disorder, MRE manic, moderate, as well as ADHD, combined type (Tr. 15).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record. The ALJ gave great weight to both of Dr. Jeffries' consultative examination assessments (Tr. 50-51). Likewise, he accorded significant weight to the state agency reviewing physician opinions because "they are deemed experts and highly knowledgeable in the area of disability" (Tr. 52-53). As to Dr. Lester's assessments, the ALJ noted that one assessment indicated Dr. Lester was an LPC while one indicated he was an M.D., but found that there was no evidence Dr. Lester had treated the claimant (despite the claimant's own testimony at the administrative hearing to that effect (Tr. 64)), and thus gave his opinion no weight (Tr. 52).

The claimant first argues that the RFC assigned by the ALJ did not account for his limitations in concentration, persistence, and pace, nor did it account for his need for a low-stress environment. The Court agrees. Although the ALJ found that the claimant's bipolar disorder and panic disorder were severe impairments, he failed to connect these impairments to his RFC assessment (much less consider all his impairments in combination). *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ gave great weight to the findings of Dr. Jeffries, and yet his opinion is devoid of how he accounted for her repeated findings related to the claimant's need for a low stress environment, which is the only way she indicated that he could maintain pace. This is improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). The Commissioner attempts to argue that the ALJ's RFC *did* account for the claimant's limitations regarding concentration, persistence, and pace, as well as his need to work in a low stress environment, but such arguments are improper *post hoc* rationale that the Court declines to adopt. *See Haga v.*

*Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. The error here is that the ALJ himself did not connect the evidence to the actual RFC limitations.

Additionally, the claimant argues that the ALJ erred in completely disregarding Dr. Lester's opinions. Although the evidence that Dr. Lester was the claimant's treating physician beginning August 2013 was somehow not made part of the original administrative record, it was made part of the record when the Appeals Council reviewed it (Tr. 412). As such, a proper analysis requires the Appeals Council to consider this additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 2-6), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. In particular, Dr. Lester's treating notes were never presented to the ALJ prior to his decision, and in fact were the reason the ALJ gave his opinions no weight at the administrative level. They are thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d

at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In formulating the claimant's RFC, the ALJ relied, at least in part, on the lack of statements by any treating physician with regard to the claimant's limitations. But Dr. Lester's assessment strongly suggests the claimant could not work on a full-time basis due to his mental impairments (Tr. 9-34,405-412). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through the date of the ALJ's decision, so all of the records (which pertain to dates prior to the ALJ's decision) are relevant to the claimant's condition as to the existence or severity of her impairments. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the appropriate standards described below.

Because the ALJ failed to properly assess the evidence in determining the claimant's RFC, including the treating physician opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**